IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, | : : Civil File No. |
| Plaintiff, | : : 1:24-cv-01429-KAM-JAM |
| v. | : : **FIRST AMENDED** : **COMPLAINT – CLASS ACTION** |
| HEAVY FLUCE INC., D/B/A FLUCE AI | : : |
| and | : : |
| RALPH COHEN | : |
| Defendants. | |

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. The Plaintiff James E. Shelton alleges that Heavy Fluce Inc., doing business as Fluce AI, and through its owner and founder, Ralph Cohen, made unsolicited pre-recorded telemarketing calls to Mr. Shelton and others without their prior express consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff James E. Shelton is an adult individual.

6. Defendant Heavy Fluce Inc. is a New York corporation located in this District, which does business as "Fluce AI".

7. Defendant Ralph Cohen is an individual residing in this District, who is the owner of Fluce and the mastermind of its illegal telemarketing scheme.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Defendants because they are registered in this District, located in this District, and made calls from this District.

10. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made from this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Shelton's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

16. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

17. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices to business lines. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

18. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id*.

## Factual Allegations

19. Fluce offers an artificial intelligence platform service that is used to make tens of thousands of automated sales calls using artificial intelligence software provided by third-parties Amazon and Twilio.

4

20. Fluce charges upwards of $100,000 for access to its platform service.

21. To generate leads and find potential customers interested in using its services, Fluce makes telemarketing calls using artificial, prerecorded voices, namely, artificial intelligence chat bots, to consumers who have never had a relationship with them and who have never consented to receive their calls.

22. Defendant Cohen personally programmed the Fluce platform to make the calls complained of herein.

23. Defendant Cohen personally organized, uploaded, and programmed the use of the list to Fluce's system, which included the Plaintiff's number.

24. Defendant Cohen personally paid for the accounts used to send the calls at issue herein, including the Twlio telephone service, which was paid for by him and registered in his name.

25. Defendant Cohen personally authorized and directed the use of pre-recorded messages to send the calls.

26. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff's telephone number (the "Number") is (484) XXX-XXXX.

28. That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

29. The VoIP telephone service for the Number is Voip.ms.

30. The service charges a ring charge of $0.08 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

31. The service also charges a per-minute charge of $0.009 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

32. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any calls placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

33. Despite this, the Defendants placed at least four calls to the Plaintiff using an artificial or prerecorded voice on February 8, 2024.

34. The calls all came from the caller ID 646-760-4530 and were sent within two hours of each other.

35. The Plaintiff answered the call on February 8, 2024 at 4:58 PM.

36. When Plaintiff answered, there was a delay before an artificial intelligence prerecorded voice answered.

37. That artificial intelligence robot attempted to sell the Plaintiff Defendants' service and confirmed it was calling from Defendant Fluce. The robot also scheduled a callback from a human.

38. The call was clearly pre-recorded and was sent using an artificial voice because (a) the robot's questions were sometimes cut off, (b) the robot had a generic, monotone voice, (c) the robot failed to understand the Plaintiff or questions asked to it, (d) the robot made identical sounds, (e) it would be illogical for a human to call someone and play various scripted questions without the ability to engage in dialogue, and (f) the Plaintiff needed to repeat his responses multiple times to the robot.

39. The Plaintiff was later called at 6:24 PM the same evening (February 8, 2024) by Defendant Cohen who confirmed that he was called by Fluce and that he spoke with the Defendants' prerecorded artificial, pre-recorded voice chatbot. To be clear, the Plaintiff does not sue for this call at this time.

40. The individual Plaintiff spoke to was Defendant Ralph Cohen, who is listed as the "founder" of Fluce in a contract sent to the Plaintiff.

41. Defendant Cohen is the *only* employee of Fluce with whom the Plaintiff spoke and was the individual who wanted to sell the AI.

42. Mr. Cohen identified himself as an employee of the Defendant. In reality, he is Fluce's founder and owner.

43. Mr. Cohen further promoted the Defendants' AI service that was initially pitched on the illegal prerecorded calls.

44. Mr. Cohen then sent the Plaintiff an e-mail consistent with the offer from the solicitation on February 8, 2024 at 9:10 PM.

45. The e-mail included a link to a proposal titled "AI Software Licensing and Resale Agreement" from Defendant, which confirmed that the Defendant Fluce does business as "Fluce AI". A screenshot of the top of this proposal is below, confirming Defendant Fluce's corporate identity and Defendant Cohen's role in the organization:



46. Furthermore, this proposed agreement also lists Mr. Cohen as Fluce's "Founder:"

47. Defendant Ralph Cohen may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to

be the act, omission, or failure of such carrier or user *as well as of that person.*" 47 U.S.C. § 217 (emphasis added).

48. Mr. Cohen personally directed the TCPA-violative conduct at issue because he personally programmed the system which sent the prerecorded message which violated the TCPA, personally attempted to sell the services being advertised, and personally paid for and programmed the requisite systems required to make the calls.

49. Mr. Cohen was also the individual responsible for drafting, setting, implementing, and controlling Fluce's marketing strategy, including the use of illegal automated prerecorded AI calls using Fluce's system and the scripting for such calls, as well as paying for them.

50. Mr. Cohen also maintains a personal YouTube channel wherein he advertises the Fluce system and its automated telemarketing capabilities.

51. The foregoing facts demonstrate that Mr. Cohen had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

52. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

### Class Action Allegations

53. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

54. The Class of persons Plaintiff proposes to represent is tentatively defined as:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or numbers for which they were charged for the call (2) Defendants, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

55. The Class as defined above is identifiable through phone records, phone number databases, and business and customer records of Defendants, including from Twilio.

56. Based on the *en masse* nature of telemarketing, the potential members of the Class likely number at least in the thousands.

57. Individual joinder of these persons is impracticable.

58. The Plaintiff is a member of the class.

59. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) Whether Defendants used an artificial or pre-recorded voices to make the calls;

    (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

    (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

60. Plaintiff's claims are typical of the claims of members of the Class.

61. Plaintiff is adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

63. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff and the Robocall Class)**

64. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

65. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

66. The Defendants' violations were negligent, willful, or knowing.

67. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

68. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, to any protected telephone number enumerated in Section (b)(1)(A)(iii) in the future.

B. As a result of Defendants' negligent, willful and/or knowing violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,


*/s/ Anthony Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff and proposed class*